UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HASSON WILSON,

                                  Plaintiff,

   v.

                                 9:19-CV-1294

CABRERA,[1] Corrections Sergeant and         (DNH/ATB)
J. SPINK, Corrections Officer,

                                Defendants.

HASSON WILSON, Plaintiff, pro se
KONSTANDINOS D. LERIS , Asst. Attorney General, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge. Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 14). Plaintiff has not responded to the motion, despite being given a sua sponte extension of time by the court to do so, and being warned of the potential consequences of his failure to respond. (Dkt. No. 17). For the following reasons, this court agrees with the defendants and will recommend dismissing plaintiff's amended complaint for failure to exhaust administrative remedies.

**I.   Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

---

[1] Plaintiff misspelled this defendant's name in the complaint, as "Caberra." The defendant's name is Sergeant Jenni Cabrera, and the court will refer to her with the proper spelling of her name.

2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.   Facts

The court will briefly review the facts as stated in the amended complaint, as well as those facts presented by defendants in their motion, which are currently unopposed by plaintiff.  Plaintiff states that on June 16, 2018, after he was released from the Special Housing Unit ("SHU") at Mohawk Correctional Facility ("MCF"), an inmate told him that a "Blood" gang member named "Kilo" thought that plaintiff was affiliated

with the "Crips" and was "pushing for the Bloods to cut [him]." (Amended Complaint ("AC") ¶ IV at 4).[2] Plaintiff states that "on an unknown time and date," he told defendant Cabrera what the other inmate told plaintiff. (*Id.*) Plaintiff claims that defendant Cabrera asked plaintiff for more information, but when plaintiff told her that he did not have the information, she told him that he could not "sign into protective custody," so he returned to his housing unit. (*Id.*)

Plaintiff states that "on or around" July 4 to July 10, 2018, he relayed the information to defendant Spink, plaintiff's "73-B" housing unit officer. (*Id.*) Plaintiff claims that defendant Spink told plaintiff that he was not going to help him "after what [plaintiff] did to him in Housing Unit 73-F." (*Id.*) "They" were not going to admit plaintiff into protective custody without "valuable information," so plaintiff went back to his "cube." (AC ¶ IV at 5).

Plaintiff states that, on July 17, 2018, as he was returning to his housing unit from the "West Yard" recreation, he was attacked by "Kilo." (*Id.*) Plaintiff states that Kilo put him in a choke hold and cut on the right side of his face. Plaintiff was thrown to the ground, and his assailant "power walked" toward his housing unit in an effort to get away. Plaintiff tried to report the incident, but no one was present in the "Bubble," so plaintiff went back to his housing unit to report the incident to his housing unit officer. (*Id.*) Plaintiff's housing unit officer contacted the area sergeant, and plaintiff was taken to the medical unit. (*Id.*) Plaintiff received medical attention and then was taken to SHU for protective custody. (AC ¶ IV at 6). This injury left plaintiff with a permanent scar.

---

[2] Plaintiff has not numbered the pages of his AC, thus, the court will cite to the pages of the AC as assigned by the court's electronic filing system CM/ECF.

3

(*Id.*)

Plaintiff states that he filed a grievance and appealed its denial to the Superintendent of MCF. (*Id.*) Plaintiff alleges that the Superintendent found no wrongdoing, and plaintiff appealed this determination to the Central Office Review Committee ("CORC"), but had not received a response. (*Id.*) Plaintiff's first claim is that defendants Cabrera and Spink failed to protect him from a foreseeable assault. (AC ¶ V at 7 - First Claim). Plaintiff's second claim is that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they required plaintiff to give them information before they would sign into PC. (AC ¶ V at 7 - Second Claim). Plaintiff's third claim is that the defendants "created a custom or policy" which led to plaintiff's injury and an Eighth Amendment violation. (AC ¶ V at 7 - Third Claim).

Plaintiff seeks substantial monetary relief. (AC ¶ VI at 7).

### III. Exhaustion of Administrative Remedies

####    A.   Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)), *abrogated on other grounds by Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison

administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of

harassment. *Id*. § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. at 1857. "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the

6

inmate. *Id; see also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

### B. Application

Defendants argue that plaintiff failed to exhaust his administrative remedies. This court agrees. The court first notes that plaintiff essentially concedes in his AC that he did not wait for the CORC response prior to filing this federal action and thus failed to exhaust his administrative remedies.[3] (AC at 6). Defendants have filed various declarations and exhibits detailing plaintiff's attempt at exhausting administrative remedies. Plaintiff has not responded to the defendants' motion, but the court will review the facts in order to ensure that the defendants have sustained their burden to show that there are no issues of material fact and that they are entitled to summary judgment.

Plaintiff alleges that the assault occurred on July 17, 2018 while he was incarcerated at MCF. Plaintiff was transferred to Mid-State Correctional Facility ("Mid-State") on August 2, 2018. (Joseph Cieslak ("Cieslak") Declaration ("Decl.") ¶ 19 & Ex. B) (Dkt. Nos. 14-3 & 14-5). Plaintiff stayed at Mid-State until he was transferred to Marcy Correctional Facility ("Marcy") on September 24, 2018, where he remained until he was transferred to Fishkill Correctional Facility ("Fishkill") on October 18, 2018. (*Id.*) Plaintiff was incarcerated at Fishkill until August 15, 2019. (*Id.*)

---

[3] Plaintiff appears to believe that he exhausted his remedies by filing an appeal with the CORC, assuming he did so. However, it is clear from the case law cited above, that the inmate must obtain a response from the CORC in order to complete the exhaustion process.

7

Plaintiff filed one grievance while he was at MCF, dated July 25, 2018 (MHK-13545-18). (Cieslak Decl. ¶ 21 & Ex. D). In this grievance, plaintiff alleged that he was cut from behind by another inmate on July 17, 2018 and there were no officers present to prevent the "assault." (*Id.*) Exhibit D to the Cieslak declaration is a copy of the plaintiff's grievance. (Dkt. No. 14-7). Plaintiff stated that he was only observed leaving the yard, and he made it all the way to the housing unit "without begin stopped" because "no officers were around after I got cut." (*Id.*) There are no other factual statements or claims in the grievance. Plaintiff requested "further investigation." (*Id.*)

On September 20, 2018, plaintiff's grievance was denied by the IGRC, finding no staff misconduct. (Cieslak Decl. ¶ 27 & Ex. E). The response was mailed to plaintiff at Mid-State. (Cieslak Decl. ¶ 28). A copy of the investigation report is attached to the grievance documents. (Ex. E at 1) (Dkt. No. 14-8). The report states that the officers who were "covering" the walkway did not observe any cutting activity. (*Id.*) The report further states that officers are on duty to provide security and prevent dangerous activity, but there are times when inmates may commit harmful activities "despite the presence of security staff." (*Id.*) Plaintiff signed the appeal statement on October 1, 2018. (*Id.*)

The Superintendent denied plaintiff's appeal on November 18, 2018. (Cieslak Decl. ¶ 30 & Ex. F). The Superintendent's response was detailed. He stated that the officers who were covering the walkway were interviewed. Plaintiff was interviewed and explained the location of the assault, mentioned another inmate as the perpetrator, and that another inmate had told him. Plaintiff alleged that he was "cut" because he was a CRIP gang member, but provided no witnesses. (Ex. F) (Dkt. No. 14-9). The

perpetrator was identified and disciplined. (*Id.*) At the time that plaintiff received the Superintendent's response to his grievance, he was incarcerated at Fishkill. In order to appeal the Superintendent's response to the CORC, plaintiff would have to sign the appeal and return it to the facility where the incident occurred and where he filed his grievance. (Sally Reams[4] Decl. ¶ 11).

Defendants have submitted the declaration of Rachael Seguin, the Assistant Director of the IGP for the New York State Department of Corrections and Community Supervision ("DOCCS") (Seguin Decl. ¶ 1) (Dkt. No. 14-14). As the Assistant Director of the IGP, Ms. Seguin is the custodian of the records maintained by the CORC. (Seguin Decl. ¶ 3). Assistant Director Seguin searched the CORC database for grievances appealed by plaintiff to the CORC during the time in question. (Seguin Decl. ¶ 12). The records reflect that plaintiff appealed two grievances to the CORC from 2018 to the present, and neither of those grievances related to the incident which forms the basis for this federal complaint. (Seguin Decl. ¶¶ 15-16 & Ex. A). Both of the grievances that were appealed to the CORC were initially filed in 2019. (Ex. A) (Dkt. No. 14-15).

Thus, there is no record of plaintiff having appealed his grievance to the CORC, rendering his administrative remedies unexhausted. Plaintiff has not responded to the defendants' motion for summary judgment to argue that the remedies were "unavailable," nor is it likely that such a claim would succeed. Plaintiff was clearly aware of how to appeal a grievance after he left the facility where the incident occurred because he was able to successfully appeal the IGRC's determination to the

---

[4] Sally Reams is the IGP Supervisor at Fishkill. (Reams Decl. ¶ 1) (Dkt. No. 14-12).

Superintendent after he left MCF and was incarcerated at Mid-State. Thus, there is no basis to find that the administrative remedies were unavailable to plaintiff. Although he states in the AC that he appealed to the CORC and was awaiting a response, there is no evidence of such an appeal, and in any event, plaintiff's remedies would still be unexhausted if he had not received a response from the CORC, since he is not making a claim that the remedies were somehow unavailable.[5] *See Williams v. Priatno, supra* (remedies unavailable where grievance procedure was so confusing that plaintiff could not ascertain whether and how he could pursue his grievance).

Defendants also argue that plaintiff's remedies are unexhausted because the grievance that plaintiff did file did not mention the incident involving either of the two defendants. This court agrees. It is well-settled that a plaintiff does not have to name all the defendants in his grievance in order to exhaust his administrative remedies. The Supreme Court has held that "nothing in the [PLRA] imposes a 'name all defendants' requirement. . . ." *Jones v. Bock*, 549 U.S. at 217. The court looks to the grievance procedure promulgated by the state in question. *Bailey v. Weckesser*, No. 18-CV-06292 (FPG), 2020 WL 1333451, at *6 (W.D.N.Y. Mar. 23, 2020) (citing *Jones*, 549 U.S. at 218). Thus, "'exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.'" *Id.* (quoting *Jones*, 549 U.S. at 219). In *Bailey*, the court noted that "'[a]ll that is necessary is that the grievance contain a 'concise, specific description of the problem.'" *Id*. (quoting *Varela v. Demmon*, 491 F. Supp. 2d

---

[5] As stated above, plaintiff has failed to respond to the summary judgment motion, despite being given a sua sponte extension of time to do so and being warned of the consequences of that failure. (Dkt. No. 17).

10

442, 449 (S.D.N.Y. 2007) (quoting N.Y. Comp. Codes R. & Regs., tit. 7, §
701.5(a)(2)).

In this case, plaintiff's grievance only referred to the fact that plaintiff was attacked by another inmate, and that there were no officers on duty to prevent the attack. When the issue was investigated, the officers who were on duty "covering" the walkway were interviewed and stated that they did not see the incident. Although when plaintiff was interviewed, he stated that another inmate told him about "Kilo," plaintiff never mentioned that he had spoken to defendant Cabrera approximately one month before the incident and spoke to defendant Spink at a week or more before the incident, requesting that he be placed in PC.

This is not simply an issue of failure to identify a defendant. The subject matter of this case is an alleged failure to protect by defendants Cabrera and Spink, but the subject matter of his grievance was the lack of security coverage on the walkway which allegedly allowed the attack to occur. The investigation of the grievance would not have covered this claim and would not have alerted prison officials to any alleged misconduct by defendants Cabrera and/or Spink.

In *Baily*, one of the issues was whether a retaliation claim had been exhausted against one of the defendants who was not named in the grievance. While noting that there is no identification requirement under New York law, the court also recognized that the plaintiff's grievance did not even hint that other officers were involved in his incident, and "therefore did not 'provide enough information . . . to allow prison officials to take appropriate responsive measures[,]'" . . . , such as interviewing CO Hodkinson." *Bailey*, 2020 WL 1333451, at *6 (quoting *Johnson*, 380 F.3d at 697). The

11

court dismissed the retaliation claim against the officer.

Dismissal for failure to exhaust is even more appropriate in this action. There was absolutely no discussion in plaintiff's grievance that he requested or was refused PC by the defendants who he names herein. As stated above, plaintiff states that he spoke to defendant Cabrera one month before the incident, and she asked him for more information. He spoke to defendant Spinks approximately a week or more before the incident. Even though defendant Spinks allegedly told plaintiff that he would not help him because of what plaintiff did to Spinks when plaintiff was housed on another unit, plaintiff never mentions a failure to protect by either of these defendants in the grievance. Rather, he focuses on the lack of security coverage on the walkway. Neither defendant is alleged to have been present or responsible for security on the walkway. Plaintiff's grievance would not have alerted the corrections officials to the failure to protect claim that plaintiff raises in this complaint against defendants who he had not spoken with for at least a week, and more in the case of defendant Cabrera. Thus, even if plaintiff had appealed to the CORC, this court would find that plaintiff's administrative remedies are unexhausted, and the amended complaint may be dismissed in its entirety.

Generally a dismissal for failing to exhaust administrative remedies is without prejudice if plaintiff may complete the exhaustion requirement, and the time for doing so has not expired. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quoting *Snider v. Melindez,* 199 F.3d 108, 111-12 (2d Cir. 1999)). However, the case may be dismissed with prejudice if the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Id.* at 88. In this case, more

than a year has passed since plaintiff should have appealed the grievance to CORC.[6] Because the plaintiff's failure to exhaust his administrative remedies is incurable at this time, I will recommend dismissing the amended complaint with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 14) be **GRANTED**, and the amended complaint (Dkt. No. 7) **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 15, 2020

_____
Andrew T. Baxter
U.S. Magistrate Judge

---

[6] The Superintendent's denial was dated November 13, 2018, and plaintiff had seven days to file the appeal or ask for an extension. 7 N.Y.C.R.R. §§ 701.5(d)(1)(i) & 701.6(g) (extensions of time). "An exception to the time limit may not be granted if the request was made more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision." *Id.* § 701.6(g)(1)(i)(b).